JOHN V. COPREN, Petitioner, *v.* THE STATE BAR
OF NEVADA, Respondent.

No. 3481

July 15, 1947.                    183 P.2d 833.

*John V. Copren,* in pro. per.

*Harlan L. Heward,* of Reno, Representative of the Board of Governors of the State Bar of Nevada, for Respondent.

## OPINION

By the Court, HORSEY, J.:

The petitioner, John V. Copren, has petitioned this court to review the action of the board of governors of the state bar of Nevada recommending that he be suspended from the practice of the law in the State of Nevada for three years, and that upon such review the proceedings against petitioner be dismissed.

The proceedings in this matter were initiated by a complaint in writing, verified by Bruce R. Thompson, Esq., a member of the Local Administrative Committee of District No. 6, in and for Washoe County, of the State Bar of Nevada, on the 3d day of November, 1945, and thereupon filed by said committee.

It is alleged in paragraph II of the complaint that at all times mentioned in count 1 of paragraph IV of the said complaint John V. Copren was an attorney at law, residing in San Francisco, California, and Reno, Nevada, and was a member of the State Bar of Nevada, engaged in the practice of his profession in said state, and that at all times mentioned in counts 2 and 3 of paragraph IV of the complaint he was a member of the state bar of California, engaged in the practice of his profession therein.

In count 1 of paragraph IV of the complaint certain

acts of professional misconduct are alleged as having occurred in the counties of Washoe, Lyon and Ormsby, in the State of Nevada.

In said count 1 it is alleged that the accused, John V. Copren, on October 25, 1944, in Reno, Nevada, before W. E. Zoebel a notary public in and for the county of Washoe, State of Nevada, swore to, and that he caused to be filed, on November 2, 1944, in the First judicial district court of the State of Nevada, in and for the county of Lyon, an affidavit. The said affidavit, set forth in full in said count 1, is entitled, "Affidavit of Service of Notice of Appeal," and, among other statements, contains the following: "Affiant avers that on the 14th day of August, 1944, he served a true and correct copy of the attached Notice of Appeal, in the above entitled matter upon said John R. Ross, who resides and has his law offices as aforesaid; that he made said service by then and there on said 14th day of August, 1944, enclosing a true and correct copy of said Notice of Appeal, a copy of which is attached hereto, in a sealed envelope addressed to said John R. Ross, Sweetland Building, Carson City, Nevada, and then and there on said 14th day of August, 1944, deposited said envelope so addressed and containing said copy of said Notice of Appeal, in the United States Post Office at Reno, Washoe County, Nevada, with postage fully prepaid thereon. Affiant avers that on the 14th day of August, 1944, he served a true and correct copy of the attached Notice of Appeal in the above entitled matter upon said George L. Sanford, who resides and has his law offices as aforesaid; that he made said service by then and there on said 14th day of August, 1944, enclosing a true and correct copy of said Notice of Appeal, a copy of which is attached hereto, in a sealed envelope addressed to said George L. Sanford, Industrial Building, Carson City, Nevada, and then and there on said 14th day of August, 1944, deposited said envelope so addressed and containing said copy of said Notice of Appeal, in the United States Post

Office at Reno, Washoe County, Nevada, with postage fully prepaid thereon. * * *"

It is further alleged in said count 1 that the accused swore to a second affidavit, on February 21, 1945, in Reno, Nevada, before Maurice J. Sullivan, a notary public in and for the county of Washoe, State of Nevada, and thereafter caused said affidavit to be filed in a proceeding before this court, entitled "In the Matter of the Estate of Harry F. Powell, sometimes known as and called H. F. Powell, deceased, No. 3425." Said affidavit, as alleged in full in said count 1, is entitled "Answer and Counter-affidavit of John V. Copren," and is as follows:

"State of Nevada,  ⎱ ss.
County of Washoe.  ⎰

"John V. Copren, being first duly sworn, deposes and says: that he is the appellant in the above entitled proceeding; that affiant makes this affidavit in support of his motion in opposition to respondent's motion to dismiss appeal and in answer to the affidavits served and filed by said respondent in support of his said motion to dismiss appeal.

"Affiant avers that the Notice of Appeal in the above entitled proceeding was served upon John R. Ross and George L. Sanford, attorneys for respondent, and upon Walter Whitacre, County Clerk of Lyon County, and ex-officio clerk of the First Judicial District Court of the State of Nevada, on the 14th day of August, 1944, in the manner set forth in the affidavit of service contained in the Transcript on Appeal on file in the above entitled Court.

"Affiant avers that he has no information or belief upon the matters set forth in the affidavit of Pete Petersen and basing his denial upon that ground denies generally and specifically, each and every allegation in said affidavit set forth. That said affidavit of Pete Petersen is not based upon any fact but suppositions alone.

"Answering the joint affidavit of George L. Sanford and John R. Ross, affiant avers that he has not sufficient

or any information to answer the allegations therein contained as to when said notice of appeal was received by each of said parties, but affiant upon and according to his information and belief avers that said copies of said notice of appeal were received by said parties prior to the time stated in said affidavit, and that said copies of said notice of appeal were duly delivered in the regular course of mail.

"Affiant avers that after mailing said notices of appeal as set forth in the affidavit on file, and on or about the 16th day of August, 1944, he wrote a letter to said George L. Sanford and said John R. Ross, and mailed the original of said letter to said George L. Sanford, addressed to him at Carson City, Nevada, and mailed the copy of said letter to said John R. Ross, addressed to him at Carson City, Nevada, each to their respective office address, requesting a copy of the Court order made on June 14th, 1944, and affiant avers upon and according to his information and belief these are the envelops referred to in said affidavit."

It is further alleged in count 1, paragraph IV, as follows: "That the allegations and averments made in said affidavits were and are untrue and false and were known by the accused at the time said affidavits were respectively sworn to and at the time that they were respectively filed, to be false and untrue, particularly but not exclusively, in that the accused did not, on August 14, 1944, serve a true, or any copy, of the Notice of Appeal in the action and proceeding referred to in said affidavits, upon, or mail to either of the attorneys for the Administrator in said action and proceeding, to-wit, John R. Ross or George L. Sanford, and in that the accused did not serve upon or mail to said attorneys, or either of them, copies of the Notice of Appeal in said action and proceeding until August 16, 1944."

In counts 2 and 3 of paragraph IV of the complaint, certain acts of professional misconduct stated to have

occurred in the State of California are alleged, as follows:

"Count 2

"Eugene Connelly died in October, 1937, leaving surviving him his widow and a son and daughter. He bequeathed all of his estate to his widow. The estate consisted of only an automobile, but three pieces of real property were in the name of Rosella Connelly (hereinafter referred to as Mrs. Connelly) at the time of her said husband's death. Accused had known Connelly and had transacted business with him for a long time before his death. The accused 'sent for' Mrs. Connelly after the death of Connelly and suggested to her that it would be advisable to bring an action to quiet title to the real property. At that time Mrs. Connelly was 63 years of age and was inexperienced in business matters. She agreed to follow accused's suggestions and it was arranged he would represent her in such action. It was understood between them that accused would make no charge for his services because of his previous association with Connelly. Thereafter accused discussed the matter of bringing the action with William Breen, another member of the Bar, who had also been a friend of Connelly, and was told that in Breen's opinion no action would be necessary to establish Mrs. Connelly's title to the real property standing in her name. Accused then stated that the title company had informed him that it would be advisable to have an administratrix with the will annexed appointed and to bring suit to quiet title. Breen again disagreed with that view but stated that nevertheless he would assist in the action in any way he could because of his friendship with Connelly. Breen also stated that he would not charge a fee for his services but would expect to be reimbursed for costs. Breen assisted in the matter by representing the daughter, who was appointed administratrix with will annexed. Thereafter and on November 15, 1937, accused

obtained from Mrs. Connelly the sum of $250 for the purpose of paying a fee to Breen for his services in connection with the proceedings, on the understanding that if Breen's fee was less than this amount the balance would be repaid to Mrs. Connelly. Accused instituted the quiet title action against the administratrix with will annexed and on December 22, 1937 a decree was entered quieting the title in Mrs. Connelly. Prior to this date accused had paid Breen $20 on account of expenses but no sum had been paid to him as a fee. No part of the remaining $230 was expended for any purpose connected with the Connelly litigation, but accused co-mingled said balance of $230 with his own funds and appropriated it to his own use and benefit, without the knowledge of Mrs. Connelly.

"On December 22, 1937 accused secured an additional sum of $50 from Mrs. Connelly on the representation that it was to be used for expenses, although no other expenses were contemplated at that time. This sum was not used for expenses but was appropriated by the accused to his own use without Mrs. Connelly's knowledge or consent.

"On March 10, 1938, Mrs. Connelly also paid accused the sum of $100 for the express purpose of paying certain income taxes on her behalf. Of this sum only $54.65 was expended by accused for payment of income taxes, and the balance was not returned to Mrs. Connelly except at a later time and under compulsion.

"On four different occasions during March, April and May, 1938 accused borrowed from Mrs. Connelly sums of money aggregating $500, for which he gave her post dated checks. On August 11, 1938 he borrowed an additional $500, at which time he gave her a promissory note in the sum of $1,000 to cover the full amount of these loans. Thereafter he also borrowed $215 from Mrs. Connelly and gave her a post dated check therefor, but this sum was eventually repaid. On each of the occasions on which accused borrowed the sums referred to

he represented to Mrs. Connelly that he would have the funds to repay her promptly. He thereby took advantage of her lack of business experience and of the confidence she reposed in him as her attorney and as the friend of her deceased husband.

"In October, 1939, at which time no part of the $1000 had been repaid, Mrs. Connelly became disturbed because of the nonpayment and consulted Breen. She then learned for the first time that he had not been paid the $230 or any sum as a fee in connection with the probate proceeding and that accused had only paid him $20 for costs. Thereafter Mrs. Connelly employed other counsel to represent her in collecting the money owed her by accused. The accused then furnishing an accounting claiming certain expenditures on behalf of Mrs. Connelly and paid her $300, which was accepted as full payment of the amounts owing her from the advances made to him, except for the sums represented by the promissory note. In an action on the note brought by Mrs. Connelly accused confessed judgment in the sum of $1140. No part of said judgment has been paid.

"Count 3

"On May 6, 1943, one Routt was convicted of a criminal offense in the District Court of the United States in and for the Northern District of California, Southern Division, on charges of obtaining and selling marihuana. On May 12, 1943 Lillie Lee Routt, wife of the said Routt, consulted accused as to the advisability of seeking a new trial or taking an appeal from the judgment. It was agreed between them that accused would receive the sum of $50 for making an investigation of the matter and advising said Mrs. Routt in the premises. On the following day said Mrs. Routt gave accused the $50. At the time of these events an appeal had already been taken by Alfred J. Hennessy, who had represented Routt at the trial. This fact was unknown to said Mrs. Routt when she consulted accused, who did not become aware of said fact until the institution of hearings before the

State Bar of California, and subsequent to July 7, 1943. On the date accused received the $50 he examined the file in the Federal Court action and learned that a notice of appeal had already been filed. Thereafter accused failed to return the $50 to the said Mrs. Routt and neglected to communicate with her further in connection with the matter."

The petitioner herein filed an answer, in which he admitted the swearing to and filing of the affidavits set forth in count 1 of paragraph IV of the complaint, but in which he denied any statements therein were false or untrue, and denied that he did not, on August 14, 1944, serve by mail, or mail to, the attorneys mentioned in said count 1 the copies of the notice of appeal involved, and denied that he did not serve same by mail, or mail same, until August 16, 1944.

The petitioner, in his answer, further denied all the charges of professional misconduct alleged to have occurred in California, and which are alleged in detail in said counts 2 and 3 of paragraph IV of the complaint, and are hereinabove set forth. Furthermore, petitioner attempted to explain, by way of affirmative defense, each of the said charges.

The proceedings in the case before the local administrative committee came on for hearing January 15, 1946, and thereafter, being continued from time to time. The hearing was completed April 2, 1946, and that committee thereupon made its findings and recommendations.

The committee found to be true all the facts stated in paragraphs I, II and III of the complaint; also found to be true all the facts stated in said count 1, paragraph IV (the misconduct alleged to have occurred in Nevada by the making of the said affidavits alleged to be false), and all the facts stated in counts 2 and 3, paragraph IV thereof (the misconduct alleged to have occurred in California).

It is also stated, in paragraph 5 of the findings and recommendations of the committee that: "The facts set

forth in Counts II and III contained in paragraph IV of the Complaint were the basis of disciplinary proceedings against Respondent by the State Bar of California. All exemplified copy of the transcript of said proceedings from their inception until their final determination by the Supreme Court of California have been received in evidence and are part of the record in this proceeding. The Supreme Court of California found the facts set forth in counts II and III contained in paragraph IV of the complaint to be true, and ordered that Respondent John V. Copren be suspended from the practice of law in the State of California for three years and three months, effective December 1, 1944."

The committee made the following recommendations:

"1. On the basis of the foregoing findings the Local Administrative Committee recommends that the State of Nevada should recognize as a matter of comity and give faith and credit to the judgment in the disciplinary proceedings against Respondent in the State of California.

"2. That John V. Copren should be suspended from the practice of law in the State of Nevada for two years on Counts II and III contained in Paragraph IV of the Complaint; and that John V. Copren should be suspended from the practice of law in the State of Nevada for one year on Count I contained in paragraph IV of the Complaint, said periods of suspension to run consecutively and until further order of the Supreme Court of Nevada."

It will be noted that the committee, in recommending suspension for two years on counts 2 and 3 of paragraph IV of the complaint (relating to the California misconduct), followed closely the judgment of the supreme court of California based upon the same facts as alleged in said counts 2 and 3. The California suspension for three years and three months, effective December 1, 1944, would extend until March 1, 1948. If the two years suspension recommended by said local administrative committee, on or about April 2, 1946, could have

become immediately effective, same would have expired on or about April 1, 1948.

It appears that, in accordance with the procedure of the state bar of Nevada, a "Notice of Receipt of Report," dated May 15, 1946 (referring to the said report and recommendations of the local administrative committee, and including their findings and recommendations, verbatim), together with a copy of rule XXXII of the rules of procedure of the state bar of Nevada, was duly served upon the petitioner, and that thereafter, on June 4, 1946, the petitioner served and filed his application for taking additional evidence, and request for trial de novo, supported by his affidavit.

It further appears, from the record, that on December 13, 1946, the matter came on for hearing before the board of governors of the Nevada state bar, upon such application to take additional evidence, and for trial de novo. After hearing Mr. Copren's statements, and cross-examining him, the board found that there were not sufficient facts presented to justify the board in granting a trial de novo, or providing for the taking of additional evidence.

Thereafter, the board of governors of the state bar made its report, findings, and recommendations, dated January 24, 1947. The findings of the board confirmed fully, and stated, almost verbatim, the findings of the local administrative committee. The recommendations of the board of governors, however, while they followed precisely the recommendations of the local administrative committee in recommending that this court "should recognize as a matter of comity, and give full faith and credit to the judgment in the disciplinary proceedings against accused in the State of California," did not follow the said committee's recommendations as to the suspension of petitioner. They omitted entirely the recommendation of suspension of one year for the misconduct alleged in count 1, paragraph IV (the Nevada misconduct), and added one year to the two years recommended

by the local administrative committee for the misconduct alleged in counts 2 and 3, of paragraph IV (the California misconduct), making same three years. The board of governors did this, notwithstanding the fact that their recommendations were made January 24, 1947 (more than nine months after the recommendations of the local administrative committee), and three years from that date would carry the suspension until January 24, 1950, nearly a year and eleven months beyond the expiration date of the California judgment, which is February 29, 1948. We shall, hereinafter, refer further to this phase of the matter.

■ We must consider, for a moment, the question of the extent to which this court should go in reviewing the action of the board of governors. Are we required to consider and weigh the evidence, and to reach our conclusions and decisions independent and irrespective of the findings and recommendations of the local administrative committee and the board of governors? We believe that we are so required, although we should, in the exercise of our discretion, give due consideration, and accord persuasive force, to their recommendations. Lindenbaum v. State Bar, 26 Cal.2d 565, 160 P.2d 9.

This court has clearly expressed itself as to the extent of our powers and duties in the opinion by Mr. Justice SANDERS, in Re Scott, 53 Nev. 24, at pages 31, 32, 292 P. 291 292, as follows: "The first question to arise is: What is meant by the term 'review' as used in this and other sections of the act? We are in accord with the authorities holding that the Supreme Court, on review of a decision of disbarment or suspension of an attorney by the Board of Governors of the State Bar, is not bound by findings or recommendations made by a Local Administrative Committee, nor their adoption by the Board of Governors, and shall examine the entire record anew to ascertain whether or not any charge has been proven which merits disbarment or suspension, uninfluenced in whole or in part by the action taken by the

board or committee. In re Stafford [208 Cal. 738], 284 P. 670; In re Shattuck [208 Cal. 6], 279 P. 998; McVicar v. State Board of Law Examiners, D.C., 6 F.2d 33, 35."

We will now address ourselves to the question: Were the local administrative committee and the board of governors justified, in view of the evidence before them, in finding that the affidavits made by petitioner in Nevada (and upon which the charges of misconduct alleged in count 1 of paragraph IV of the complaint are predicated) were false and untrue?

We believe that they were justified in so finding, and in their recommendations of suspension for one year for such misconduct.

This court, in the case of In re Powell's Estate (Copren v. Montrose), 63 Nev. 19, 158 P.2d 545, 547, dealt fully with the matter of those affidavits, in considering a motion to dismiss the appeal upon the ground that the notice thereof was not served upon the attorneys for respondent within three days from the date of filing the original notice of appeal. The "Affidavit of Service of Notice of Appeal" had been filed November 2, 1944, in the First judicial district court of the State of Nevada, in and for the county of Lyon, as aforesaid, in the proceeding entitled, "In the Matter of the Estate of Harry F. Powell, sometimes known as and called H. F. Powell, Deceased," and had become part of the record on appeal to this court, and the other affidavit involved in the instant proceeding was entitled, "Answer and Counter-affidavit of John V. Copren," and was filed in this court in proceeding No. 3425 (the Powell estate proceeding), in opposition to said motion to dismiss the appeal.

In said case of In re Powell's Estate, etc., supra, this court not only dealt fully with, and discussed in detail, the above-mentioned affidavits of petitioner, but also with the joint affidavit of the attorneys for the administrator, George L. Sanford and John R. Ross, in which

each stated, in effect, that he received a copy of the notice of appeal on August 17, 1944, that same came in an envelope bearing a postmark, or cancellation mark, "Reno, Nev., Aug. 16, 4:30 P. M. 1944," and that he received no letter from Mr. Copren purporting to have been written August 16, 1944, and no envelope purporting to contain any such letter, or to be from Mr. Copren, bearing date August 16, 1944, other than the envelope containing a copy of the said notice of appeal.

We will now quote the portion of said opinion by the late beloved Mr. Justice DUCKER, which deals, particularly, with the said affidavit of Mr. Copren made in opposition to the motion to dismiss. In said opinion in Re Powell's Estate, etc., supra, on pages 546 and 547 of 158 P.2d, it is stated:

"In his affidavit made in opposition to the motion to dismiss, and to the affidavits in support of that motion, appellant reiterates that he served the notice of appeal as set forth in the affidavit of service contained in the transcript of appeal. He avers that having no information or belief upon the matters set forth in the affidavit of the Reno Postmaster, denies all thereof, and alleges that said affidavit is not based upon fact but supposition alone. On information and belief he avers that the copies of notice of appeal referred to in the joint affidavit of Ross and Sanford were received by them prior to the time stated in their affidavit and were delivered in the regular course of the mail. He further avers that after mailing said notices of appeal and on or about the 16th day of August, 1944, he wrote a letter to said George L. Sanford and John R. Ross and mailed the original of said letter to said George L. Sanford, addressed to him at Carson City, Nevada, and mailed the copy of said letter to said John R. Ross, addressed to him at Carson City, Nevada, each to their respective office address, requesting a copy of the Court order made on June 14th, 1944, and on information and belief avers that these are the envelopes referred to in their affidavit.

"A question of fact is thus presented as to whether the notice of appeal filed with the clerk of the court on August 12, 1944, was duly served within the three days required by said section 9385.61.

"If appellant served a copy of the notice of appeal on the 14th day of August, 1944, as he alleged in his affidavit, the service was in time because, under the provisions of sec. 8920, supra, service is complete at the time of the deposit in the post office. But it is otherwise if the deposit was not made until August 16, 1944, for then the service was one day late. A belated service is equivalent to no service at all, for there must be an actual service within the time required by the statute. Our consideration of all the evidence impels us to conclude that the preponderance thereof is against appellant's contention that the service of the notice of appeal was made in the time prescribed by the statute. The postmarks on the envelopes received by each of the administrator's attorneys are thus marked: 'Reno, Nev., Aug. 16, 4:30 P. M. 1944.' No contention is made that the postmarks are not genuine. The averment made in appellant's counter affidavit that the envelopes bearing those postmarks were envelopes enclosing letters to the attorneys which he had mailed on or about August 16, 1944, requesting a copy of an order made by the court, is mere conjecture and bears the implication that there has been a substitution. It is entitled to no weight. Counsel for the administrator are reputable attorneys of this court. One of them is a Past President of the State Bar of Nevada. Their affidavit and their characters, alike, refute the covert charge. A postmark on a letter is a circumstance tending to show that the letter was not put in the post office until the day shown in the postmark. Shelburne Falls Nat. Bank v. Townsley, 102 Mass. 177, 3 Am.Rep. 445; Hurley Bros. v. Haluptzok, 142 Minn. 269, 171 N.W. 928; Ellis' Adm'r v. Planters' Bank, 7 Howe, Miss., 235; 2 Greenleaf Ev. sec. 193.

"When as here, two letters written by the same individual, bear a postmark of the same date, the circumstances become stronger because the chance that both were overlooked and not stamped in the post office until a later date than their deposit, becomes less likely. That two such letters were not noticed from the time of their deposit, as claimed on the 14th of August, until the 16th of that month, is so improbable as to cast doubt upon the verity of appellant's affidavit. The inference of a deposit in the post office on the latter date gains force from the affidavit of the Reno postmaster as to the regularity of procedure in that office in collecting and transmitting mail, and from the presumption that those in charge of receiving and transmitting mail perform their duties in a regular and proper manner.

"In reaching the conclusion that the preponderance of the evidence is against our jurisdiction, we have also weighed appellant's affidavit in connection with the fact that his integrity as an attorney at law has been recently impeached by the Board of Governors of the State Bar and the Supreme Court of California, for dealings with clients, which resulted in his suspension from the practice of law in that state for three years and three months. In re Copren [25 Cal.2d 129], 152 P.2d 729.

"The appeal is hereby dismissed."

The petitioner strenuously argued and contended in the instant proceeding, and in his petition, also in his reply brief, that the expressions of this court, above quoted, being in a civil proceeding, did not mean more than to find that the preponderance of the evidence was against the truthfulness of appellant's statements to the effect that he mailed the copies of the notice of appeal to George L. Sanford and John R. Ross, respectively, in the Reno post office, on August 14, 1944; that it did not follow, nor was it implied, that this court meant to state, or to hold, that it was established by such clear and convincing evidences as is required in a proceeding such as this—quasi criminal in its nature and effect—that said affidavits were false.

■ It is true that a higher degree of proof should be, and we believe is, required in a proceeding such as this, involving the right and high privilege to continue to engage in the practice of the law, than is required to determine questions of fact in the ordinary civil case, or proceeding. And we are clearly mindful of that difference in the degree of proof.

In the affidavit in opposition to the motion to dismiss the appeal, the petitioner averred, on information and belief, that the copies of the notice of appeal referred to in the joint affidavit of George L. Sanford and John R. Ross were received by them prior to the time stated in their affidavit, and were duly delivered in the regular course of mail. Petitioner further averred that after mailing said copies, and on or about the 16th day of August, 1944, he wrote a letter to George L. Sanford and John R. Ross, and mailed the original to said Sanford, addressed to him at Carson City, Nevada, and the copy to said Ross, addressed to him at Carson City, Nevada, requesting a copy of the court order made June 14, 1944, and, on information and belief, further averred that these are the envelopes referred to in their affidavit.

The petitioner had no basis whatever to assert, upon information and belief or otherwise, that Mr. Sanford or Mr. Ross received, respectively, the copy of the notice upon a date earlier than they had sworn same were received, nor that they, or either of them, would resort to the trickery or dishonesty of substituting one envelope for another, to perpetrate a gross fraud upon the court, and wrongfully and criminally to bolster up their affidavit, which petitioner insinuated was false, all for the purpose of depriving petitioner's client of her just right of appeal.

As Mr. Justice DUCKER so eloquently said, 158 P.2d on page 547 of In re Powell's Estate, supra, above quoted, in referring to the joint affidavit of Messrs. Sanford and Ross: "Their affidavit and their characters, alike, refute

the covert charge." Perhaps it were better for petitioner had he not made such charges. It shows his recklessness in assailing, without any sound basis or reasonable justification therefor, the integrity of others. If petitioner had not mailed the copies of the notice until August 16, 1944, as is most probable, such charges against Mr. Sanford and Mr. Ross constituted willful perjury of the most vicious sort, attempted character assassination, in the endeavor to fraudulently prevent the dismissal of the appeal, in spite of petitioner's knowledge that he did not serve the copies of the notice of appeal within the time required by law.

As Mr. Justice DUCKER pointed out, in effect, in said opinion, when two letters written by an individual bear postmarks of the same date, it is more probable that the postmarks represent the true date of deposit than if one letter only were involved. In other words, it is far less likely that two letters mailed, for instance, two days before the date the postmarks bear, would be overlooked and remain undiscovered in a post office, than that one letter might remain undetected. If Mr. Copren mailed the two copies of the notice at the same time, in separate envelopes addressed to said respective attorneys, as he contends that he did, on August 14, 1944, in the Reno post office, one addressed to Mr. Sanford and the other to Mr. Ross, is it reasonable to believe that both envelopes would remain in the same mail receptacle undiscovered for two days, and that both would be found at exactly the same time and bear the same postmarks? It could occur, but the *likelihood* of this occurrence is so *improbable* that, *at most, it may properly be considered a remote possibility, such as perhaps might raise a possible doubt* in the instant proceeding as to whether or not the copies were mailed by Mr. Copren on August 16, 1944, the date the postmarks bear, or earlier, as he contends, *but not a reasonable doubt*. Bearing in mind, too, as did Mr. Justice DUCKER, in Re Powell's Estate, supra,

158 P.2d on page 547, the case in California, In re Copren, 25 Cal.2d 129, 152 P.2d 729, in which Mr. Copren's integrity had been impeached, and the opinion in which case was filed, by the supreme court of California, November 1, 1944, just one week after the petitioner swore to the first of the affidavits involved in the instant proceeding, October 25, 1944, before W. E. Zoebel, notary public, and less than four months prior to the second affidavit by petitioner involved herein, sworn to February 21, 1945, before Maurice J. Sullivan, a notary public; and bearing in mind, also, as before mentioned, petitioner's reckless and baseless insinuations of perjury and fraud against two reputable members of the Nevada bar, which are entitled to no consideration whatever, we have no hesitancy in reaching the conclusion that the charge against petitioner contained in count 1, paragraph IV, of the complaint, to the effect that the said two affidavits therein fully set forth, made by petitioner on October 25, 1944, and February 21, 1945, respectively, were false and untrue, has been established by clear and convincing evidence.

Considering now the acts of misconduct which occurred in California, and which are alleged in counts 2 and 3 of paragraph IV of the complaint. By virtue of an amendment to the complaint, the California proceeding is stated to be based upon the facts alleged in said counts 2 and 3, and an exemplified copy of the transcript of said proceeding was received in evidence and is part of the record in this proceeding. As has been stated, the supreme court of California found the said facts to be true, and ordered the suspension of petitioner for three years and three months, effective December 1, 1944. Both the local administrative committee and the board of governors have, as aforesaid, recommended that this court should recognize, as a matter of comity, and give full faith and credit to, the California judgment.

The respondent has referred to cases cited in an article

in the Nevada State Bar Journal of April, 1946, in support of the recommendation that the California judgment be recognized by this court, as a matter of comity. We find that those cases, and others generally, hold that a judgment of disbarment rendered in one state should, as a matter of comity, and in order to promote the maintenance of the proper decency and dignity in the legal profession, be recognized in a sister state, or states, in which the charged attorney was licensed to practice. Some of the authorities cited are: Selling v. Radford, 243 U.S. 46, 37 S.Ct. 377, 61 L.Ed. 585; Ann.Cas. 1917D, 569; In re Van Bever, 55 Ariz. 368, 101 P.2d 790; Id., 58 Ariz. 365, 120 P.2d 403; In re Leverson, 195 Minn. 42, 261 N.W. 480; In re Brown 60 S.D. 628, 245 N.W. 824; State Board v. Brown, 53 Wyo. 42, 77 P.2d 626; In re Ulmer, 268 Mass. 373, 167 N.E. 749; United States v. Green, C.C., 85 F. 857.

In only one of the above-mentioned cases has there been merely suspension, rather than disbarment, namely, In re Brown, 60 S.D. 628, 245 N.W. 824. In that case, the supreme court of South Dakota recognized, as a matter of comity, a judgment of the supreme court of Wyoming suspending, on the 9th day of September, 1930, one Edwin L. Brown from the practice of the law for three years. The South Dakota judgment was rendered December 13, 1932, when the Wyoming judgment had remaining less than nine months to run. By the South Dakota judgment, the suspension in that case was to continue only "until the 9th day of September, 1933, or until such time as it was made to appear that the judgment of suspension of the Wyoming court has been modified or set aside." In that case, the supreme court of South Dakota further stated: "It is true that the judgment of the Wyoming court was not a judgment of disbarment, but rather a judgment of suspension; however, we see no good reason why, under the law of comity between states, we should not recognize this

judgment of suspension in the same manner as we would recognize a judgment of disbarment under the authority of the above-cited case."

■ We agree with the reasoning of the honorable supreme court of South Dakota, and believe that, in the spirit and under the law of comity, we should recognize the California judgment of suspension in the *instant* case, as to the acts of misconduct of petitioner which occurred in California. The facts as to such acts of professional misconduct in that state are fully alleged in counts 2 and 3 of paragraph IV of the complaint, and are hereinbefore quoted. It was upon the basis of those facts that the supreme court of California rendered its judgment.

Petitioner has alleged in his answer, and contended in his petition and brief, that the findings by the supreme court of California as to the facts alleged against him in the California proceedings were untrue, and that such findings and judgment were wholly unjustifiable. As to that phase of the case, we may state that we have fully considered petitioner's versions and contentions and explanations as to the various accusations included in the California proceedings, and the reasoning and findings of the supreme court of California in regard thereto, as contained in Re Copren, supra, and are fully convinced that the findings of that honorable court were true and sufficiently established by the evidence in that proceeding, and that the reasoning of that court in the per curiam opinion is sound, and the judgment of suspension fully justified. I had intended to quote from the detailed discussion, as to the facts in the California proceedings, in Re Copren, supra, 152 P.2d from pages 730–732, but to do so would unduly lengthen this opinion.

A striking instance 'of petitioner's disregard of the rights of Mrs. Connelly, a client, in his handling and accounting of trust funds, was his conduct in regard to $100, which, in March, 1938, she entrusted to him to pay, for her, certain income taxes. This is one of the

items of misconduct in California alleged in count 2, paragraph IV, of the complaint in the instant proceeding. .Petitioner paid out only $54.65 for such purpose, and did not return the balance to Mrs. Connelly, nor give any satisfactory reason for not doing so, "until some time in 1940, when he was forced to render an accounting to Mrs. Connelly of this and the other money above referred to." (The quotation is from the said per curiam opinion.)

The utter indifference of petitioner to, or his failure to conceive, his proper duties as to the handling of trust funds is revealed by petitioner in his answer in the instant proceeding, relative to said income tax money, in paragraph VI, page 4, of his answer. The petitioner alleged: "Admits the receipt of $100.00 on March 10, 1938, but denies that there was any obligation to immediately pay income taxes and then immediately return a remaining balance to Mrs. Connelly, or that there was compulsion compelling the accounting and return of the balance."

Such reasoning seems to imply that an attorney may receive, in trust, funds from his client, discharge the duties of the trust whenever it suits his convenience, in the meantime retaining the client's money, and then, after finally performing the trust duty, that he may retain such balance of the money as remains, until, in his own "good" time he sees fit to return it. Such reasoning and practice, if upheld, would, of course, encourage and render easy of accomplishment the misappropriation of trust funds and commingling them with the personal funds of the attorney.

■ In the instant proceeding we shall fully recognize, as a matter of comity, the California judgment. But should we attempt to apply it literally as to the time of the suspension therein provided, three years and three months, or should we suspend for three years, as recommended by the board of governors, or merely suspend for the remainder of the term of the California judgment,

that is until March 1, 1948? The South Dakota supreme court applied, in principle, the latter alternative, as above stated, in Re Brown, supra. It would seem that that is the correct theory. If recognition is given by a state to the judgment of a sister state as a matter of comity, same should be deemed a recognition of all the terms of the judgment, including the precise time covered by its duration period. In 34 C.J. 1127 it is stated: "Furthermore courts should not determine what part of a judgment of a court of another state should be effective and what part not, as, if such judgment is regular on the face of the record it must be given effect in all its terms." See, also, 50 C.J.S., Judgments, sec. 889.

The judgment in California, suspending Copren, did not provide merely that the suspension shall be for three years and three months, without providing precisely as to when same should commence, but expressly provided that "effective thirty days from the filing of this decision petitioner be suspended from the practice of law in this state for the period of three years and three months" [152 P.2d 734]. The decision was filed November 1, 1944, hence the period of suspension was prescribed precisely as the period commencing December 1, 1944, and ending three years and three months from that date. The term or time of duration is as much a part of the judgment as any other portion of it, and as much entitled to respect. The misconduct which is the basis of the judgment having occurred in California, the California supreme court, being apprised of all the facts and circumstances, must be deemed to have been in a position to determine, more wisely than any other court, the extent of the proposed suspension, and the time during which it should be suffered in order to teach to the offending attorney the proper lesson. That court did so, and provided, in effect, that the judgment should be deemed fulfilled and fully satisfied upon the expiration of three years and three months from December 1, 1944.

Has any other state the right to base its judgment

upon that judgment, as a matter of comity, and yet to ignore the time limitation of that judgment, and provide another time period during which it shall be operative, merely because the state bar of such other state did not promptly learn of that judgment, and did not proceed more rapidly with its proceeding? We believe not. If that course should be sanctioned, an attorney could be suspended in original proceedings in one state, and, if he were a member of the bars of three other states (for example, could be suspended in each of the other three states at respective later times for periods that could cover, or aggregate, many times the period of the original suspension, thus making the suspension periods virtually consecutive, rather than concurrent.

Thus, when the court which, because of its superior knowledge of the surrounding facts and circumstances is best fitted to determine when the good results hoped for from the suspension will most likely be accomplished, has fixed the time when the attorney will be eligible to resume his place in the profession, such determination should not be defeated, either wholly or in part, by the discordant or inconsistent action of some other state or states. This would tend to increase the punishment far beyond that intended by the supreme court of the state in which the misconduct occurred, and would operate to increase same, in some cases, far in excess of the requirements of justice. If the state bar of such sister state, or states, was not diligent in proceeding promptly, the punishment would be increased in proportion to their lack of diligence. This would be unfair and unjust to the suspended attorney, and cannot reasonably be sanctioned. Such result is not contemplated, we believe, in the proper conception of the scope of the doctrine relative to the recognition of a judgment in the spirit of comity. When the original judgment ceases to exist, all other judgments predicated thereon, whether by reason of comity or under the full faith and credit provision of the constitution, article 4, sec. 1, must likewire expire,

especially in cases of suspension of an attorney. Thus, we adopt the theory upon that proposition most strongly urged by petitioner, and also applied in Re Brown, supra, by the supreme court of South Dakota, and shall provide for a suspension for the professional misconduct alleged in counts 2 and 3 of paragraph IV of the complaint, to and including February 29, 1948, the date of the expiration of the California suspension.

This conclusion is contrary to the recommendation by the board of governors, of three years' suspension. While we respect the recommendations of the board, and commend the diligence of the members thereof, and appreciate their valuable, though uncompensated services, in this and similar cases, we must, after all, discharge our duties as members of the court in accordance with our best conception of legal principles, and adopt that course in the particular case which we conceive to be best calculated as a precedent to promote justice and equity.

As Mr. Justice SANDERS pointed out, in Re Scott, supra, to which we have already referred, we are not bound by, nor is it our duty to follow in all cases the recommendations of the board of governors of the state bar. Indeed, the last clause of section 26 of the act creating a public corporation to be known as "State Bar of Nevada," expressly provides, "Nothing in this act contained shall be construed as limiting or altering the powers of the courts of this state to disbar or discipline members of the bar as this power at present exists." Comp. Laws, sec. 565. We have, however, followed rather closely the recommendations of the local administrative committee and, except as to the duration of the suspension and the basis upon which it shall be placed, the recommendations of the board of governors. And we believe their recommendations should be carefully considered in such cases, and, as before stated, should carry persuasive force.

While it is our view that we must limit the suspension for the California misconduct to the time covered

by the California judgment, we believe, also, that the acts of misconduct committed in Nevada constituted a most serious violation of the criminal law and of the principles and ethics of the legal profession, and should not be disregarded in determining the judgment in this proceeding.

It is, therefore, the decision and order of this court that the petitioner, John V. Copren, be, and he is hereby, suspended from the practice of the law in this state, for the professional misconduct alleged in counts 2 and 3 of paragraph IV of the complaint, such suspension to commence upon the date this decision is filed, and to continue until, and including, the 29th day of February, 1948; and that the said petitioner be, and he is hereby, suspended from the practice of the law in this state for the professional misconduct alleged in count 1 of paragraph 1V of the complaint, such latter suspension to commence March 1, 1948, and to continue for the period of one year therefrom, and until he is by this court ordered reinstated.

BADT, J., concurs.

EATHER, C. J., because of illness, did not participate in the above-entitled case.

ON PETITION FOR REHEARING
August 12, 1947.

*Per Curiam:*

Rehearing denied.