142 So.2d 65 (1962)
STATE of Florida ex rel. THE FLORIDA BAR, Complainant,
v.
Ellis RUBIN, Respondent.
No. 31525.
Supreme Court of Florida.
May 31, 1962.
Henry G. Simmonite, Miami, for The Florida Bar, complainant.
Fuller Warren, Miami, for respondent.
PER CURIAM.
June 7, 1960, complaint was filed with the Grievance Committee of Dade County Bar Association charging respondent with unprofessional conduct in that he violated Canon 28 of Canons of Professional Ethics, 31 F.S.A., and Rule 19 of Additional Rules Governing the Conduct of Attorneys in Florida, 31 F.S.A. The grievance committee took testimony and on thorough investigation found probable cause of professional misconduct and recommended that further disciplinary action be taken. Whereupon a referee was appointed who reviewed the testimony of the grievance committee and on consideration found the conduct of respondent to be a violation of Canon 28 and Rule 19 aforesaid and recommended that respondent be publicly reprimanded. The Board of Governors of The Florida Bar reviewed and approved the finding and recommendation of the referee. We are confronted with a petition of respondent to review and reverse the judgment of the Board of Governors of The Florida Bar.
The charge against respondent was drawn from the referee's report, the pertinent *66 part of which is substantially as follows:
"The testimony of Bob Rosenberg, alias Bob Howard, and of Mr. Rubin himself is to the effect that on or about May 19, 1959, Mr. Rosenberg, using the name of Bob Howard, placed a long distance telephone call from the office of Ellis Rubin to Mr. Cornelius Shea in Woodhaven, New York. In said conversation Mr. Rosenberg told Mr. Shea about Mr. Rubin and recommended him as a lawyer to represent Joseph Shea [son of Cornelius Shea], who had been charged with first degree murder, and further stated to Mr. Shea that he would have Mr. Rubin contact him directly with regard to said matter. After completing the telephone call, Mr. Rosenberg informed Mr. Rubin as to what he had done, and Mr. Rubin purportedly reprimanded Mr. Rosenberg for making such a call. Nevertheless, Mr. Rubin immediately called the Air Force base near West Palm Beach, Florida, to determine whether or not Joseph F. Shea was represented by an Air Force attorney, and upon ascertaining that he was not so represented, Mr. Rubin then called Cornelius Shea at his some in Woodhaven, N.Y. and made arrangements to represent Joseph F. Shea, at least until such time as Cornelius Shea could come to Miami, Florida, and make further arrangements pertaining to the defense of his son, Joseph F. Shea. At the time Mr. Bob Rosenberg made the initial call to Cornelius Shea from the office of Ellis Rubin, Mr. Rubin was in his office, but states that he was working on other matters and was not aware of the call. The call was initiated by Rosenberg from Mr. Rubin's outer office but the testimony of all parties is to the effect that both Mr. Rubin's outer and inner offices are comparatively small.
"Mr. Rubin stated in his testimony that he was unaware of the aforesaid call being made by Rosenberg until after it had been completed. He stated that inasmuch as Rosenberg had told Mr. Shea that he (Rubin) would call him, he felt it incumbent upon him to do so, and that after having talked with Mr. Shea he felt so sorry for him that he felt compelled to agree to represent Joseph F. Shea at least until such time as Mr. Shea could come to Miami and make further arrangements regarding the defense of his son."
From this testimony the referee was of the opinion that respondent ratified Bob Rosenberg's solicitation and thereby became the principal in the transaction, and that when respondent's agent informed him of the first telephone call, the respondent should have immediately dissociated himself from the case in order to remove any suggestion that the solicitation had in any degree been done with the respondent's approval. The respondent has admitted that he may have been "guilty of acquiescing" in Mr. Rosenberg's conduct and that his conduct may have been "indiscreet," however, he contends his conduct was motivated by a charitable and sympathetic response to the obvious need of the father or a minor charged with a capital crime in a foreign state.
Respondent's history and background as a frequent defender of indigent persons leads us to believe that his actions were undoubtedly motivated by charitable or sympathetic considerations, nevertheless his initial contact with the senior Shea in New York was the direct result of an act of solicitation by his agent, Rosenberg. The respondent was admittedly aware of the impropriety of Rosenberg's actions in initially telephoning Mr. Shea. At this point the ethical course open to the respondent was to withdraw from the unwholesome situation created by Rosenberg. Other avenues of conduct were available to the respondent which would have protected the Sheas' interest while affording respondent *67 an opportunity to avoid becoming a party to his agent's unauthorized acts. Every attorney as an officer of the court is on notice that he must adhere to the strict rules of moral conduct prescribed by the Code of Ethics. Respondent's testimony reflects his recognition of the error of his action in approving Rosenberg's conduct. The judgment of the Board of Governors is supported by State ex rel. Florida Bar v. Everett, Fla. 1959, 111 So.2d 425. It should be said at the outset that the courts uniformly hold that disciplinary or disbarment proceedings are not for the purpose of punishment for any malfeasance or dereliction of duty but are solely for the purpose of purging the roll of legal practitioners of an unworthy or disreputable member and that no fine, imprisonment or other punitive sentence can be imposed.
The pertinent part of Canon 28 of the Canons of Professional Ethics is as follows:
"28. Stirring up Litigation, Directly or Through Agents.
"It is unprofessional for a lawyer to volunteer advice to bring a lawsuit, except in rare cases where ties of blood, relationship or trust make it his duty to do so. Stirring up strife and litigation is not only unprofessional, but it is indictable at common law. It is disreputable to hunt up defects in titles or other causes of action and inform thereof in order to be employed to bring suit or collect judgment, or to breed litigation by seeking out those with claims for personal injuries or those having any other grounds of action in order to secure them as clients, or to employ agents or runners for like purposes, * * *. A duty to the public and to the profession devolves upon every member of the Bar having knowledge of such practices upon the part of any practitioner immediately to inform thereof, to the end that the offender may be disbarred."
Rule 19, Additional Rules Governing the Conduct of Attorneys in Florida is as follows:
"No person heretofore or hereafter admitted to practice in Florida, shall
* * * * * *
"19. Solicit his employment or professional engagement or the employment of professional engagement of another whose partner he is, or from whose employment there is any expectation of profit or benefit, directly or indirectly, to himself; * * *."
The language of the canon and rule so quoted is so plain it hardly admits of interpretation. An examination of the circumstances out of which the charge against respondent was drawn in the light of these rules and the supporting evidence support the finding of the referee; in fact, respondent so admits. However, we find other circumstances that we think are in mitigation of the charge. It was an isolated instance of such an offense by respondent who told Mr. Shea when he called him at Rosenberg's suggestion there would be no charge for his services. It appears that Mr. Shea was in a desperate state because his son was charged with murder in the first degree and respondent proffered his service free of charge because of his sympathy for a parent who was in distress.
It further appears that in the year 1954 respondent was honored by the Florida Junior Chamber of Commerce as one of the five outstanding young men in the state for his defense of more than 200 indigents accused of crime, for which he made no charge. Respondent has also served as one of three public defenders appointed by the Dade County Bar Association to represent indigent persons in federal court; he has also served as legal officer of a local naval air reserve squadron; he has served as guest lecturer in criminal law at the University of Miami Law School and as Special Assistant Attorney General of Florida in charge of anti-subversive activities. These distinguished services to the bar and *68 the country without compensation are in harmony with respondent's proffer of service to Mr. Shea and should go far to relieve the sting of wilfulness, moral turpitude or unprofessional conduct. Account of his record of service to his country and his fellow man, we do not think the record as a whole reveals the respondent to be the kind of man who would wilfully transgress the Canons of Ethics and thereby repeatedly reproach his brethren and his profession.
In re Application of Harper, 84 So.2d 700, this court in a very thorough opinion of then Mr. Chief Justice Drew, not only discussed the circumstances under which an attorney may resign but it covered other aspects of disciplinary proceedings. In this case we approved the rule that,
"Disciplinary proceedings by The Florida Bar are essentially a function of this Court. While the local committees and the Board of Governors are not technically judicial tribunals, their findings and recommendations should be considered as those of an intermediate agency of this Court. They are in fact an arm of this Court dealing with a vital function of the Court and under its exclusive jurisdiction. See Velkov v. Superior Court in and for Los Angeles County, 40 Cal.2d 289, 253 P.2d 25, 35 A.L.R.2d 1348. While the power to render the ultimate judgment in these cases is vested in this Court, the findings and recommendations of the constituted officers of The Florida Bar are entitled to receive due consideration and are of persuasive force. Copren v. State Bar, 64 Nev. 364, 183 P.2d 833, 173 A.L.R. 284."
We have accordingly examined the charge against respondent, the finding of the referee, the local grievance committee and the judgment of the Board of Governors. We commend them for thorough work as well as their diligence in preserving the purity of the bar, but balancing all shown in the record, we are driven to the conclusion that the public interest would not be adversely affected and the integrity of the courts would be preserved by extending a more liberal credit to respondent than was done by the arms of the court in this case. It may be true that respondent over-extended his benevolence in this instance but since it was an isolated case for which no charge was made and since there is shown to be so many other benevolences to the public and the profession on his part, we are not ready to say that he was a gross or wilful violator of the Canons of Ethics.
In view of what has been said Mr. Chief Justice Roberts, Mr. Justice Thomas, Mr. Justice Drew and Mr. Justice Caldwell are of the opinion that the violation of Canon 28 of the Canons of Professional Ethics and Rule 19, Additional Rules Governing the Conduct of Attorneys in Florida, as charged in the complaint, is not shown as to Canon 28 but that such charge is proven as to Rule 19, Additional Rules Governing the Conduct of Attorneys in Florida.
Mr. Chief Justice Roberts, Mr. Justice Thomas, Mr. Justice Drew and Mr. Justice Caldwell are also of the opinion that in view of the charities, benevolences and good deeds to his fellow man on the part of respondent as revealed in this opinion, and in view of the further fact that there is no showing whatever of wilfulness, moral turpitude or corruption in respondent's conduct, that the judgment imposed on him by the Board of Governors was too severe. In other words, the judgment should be limited to an admonition to apply himself more rigidly to a study of the Canons of Ethics and the Rules Governing the Conduct of Attorneys in Florida.
Mr. Justice Terrell agrees with the findings of the referee and the Board of Governors of The Florida Bar as to what the evidence and the record show; in fact, he thinks such finding is admitted by respondent but he says that he may have been indiscreet and that he was motivated by a charitable and sympathetic response to the obvious need of the father of a minor charged with a capital crime in a foreign *69 state. Mr. Justice Terrell agrees to reduction of the penalty.
It results that a majority of the court are of the view that respondent was guilty of the violation of Rule 19 only of Additional Rules Governing the Conduct of Attorneys in Florida, and that there was no violation of Canon 28. For violation of Rule 19 respondent should be admonished to apply himself more rigidly to a study of the Canons of Ethics and the Rules Governing the Conduct of Attorneys in Florida. It is ordered that the judgment of the Board of Governors of The Florida Bar be so modified, and when done, it is hereby approved as the judgment of this court. A certified copy of this opinion and judgment shall be served on respondent and when done shall satisfy that part of the judgment to "admonish" respondent.
ROBERTS, C.J., and TERRELL, THOMAS, DREW and CALDWELL, JJ., concur.