199 So.2d 457 (1967)
THE FLORIDA BAR, Complainant,
v.
John M. ABRAMSON, Respondent.
No. 35819.
Supreme Court of Florida.
May 24, 1967.
Jerry B. Crockett, Miami, for The Florida Bar, complainant.
Allen Clements, Miami, for respondent.
DREW, Justice.
Honorable Irving Cypen, a former Circuit Judge, the referee in this disciplinary proceeding instituted by The Florida Bar, heard 130 pages of testimony by the respondent and three witnesses relative to a single charge of soliciting the legal business of three named persons.[1] In his findings and recommendations the referee stated that the principal witness against respondent, a Mr. Souter, "admitted many inconsistencies" in his testimony on direct and these were narrated in the findings. Moreover, the referee was obviously not impressed with the truthfulness or accuracy of the other witnesses. He found that the testimony of the respondent, as to the circumstances surrounding the events out of which the *458 charges arose, was true and he accepted as true the denial by the respondent of material testimony of the witnesses who testified for the Bar. He reviewed the personal history and background of respondent and, among other things, found:
"* * * After graduation, he went to work for a law firm in Dade County, Florida, which had a commercial law practice. He did not do any negligence work while with those lawyers. Approximately in May of 1964, the respondent joined the law firm of Feldman & Brush in Miami, Florida, and was an associate of that firm at the time the accident, which is the subject of this claim, arose. His new employers had a general law practice with some orientation towards workmen's compensation and personal injury work. Most of the general practice in the firm was handled by the respondent. In the approximate five-month period from the time he joined this law firm to the time of the accident in question, he testified he had virtually no experience in workmen's compensation matters or personal injury work.
"Respondent appears to be a personable, sincere young man, of limited experience in the practice of law. He testified that he had never been to a hospital prior to this accident for the purpose of interviewing a client, or potential client, who had been involved in an accident. There is no indication that he was heavily involved in workmen's compensation or personal injury work. No evidence has been presented, and the undersigned has no personal knowledge of the respondent's personal or professional reputation in the community. No other disciplinary history, other than the instant complaint, is known.
"FINDINGS OF FACT

"After considering all of the pleadings, exhibits and evidence before me, I find that:
"1. On or about October 9, 1964, the respondent received a telephone call from his answering service, to the effect that some unknown person had called the law office where he was employed on an associate basis, advising that a lady or ladies had been involved in an auto accident and were at Christian Hospital and desired a lawyer from his law firm to come to the hospital in order to represent them.
"2. That, after receiving this telephone call, the respondent did go to Christian Hospital. At the hospital he made efforts to discover who the lady or ladies were who sought the representation of his law firm. He talked to John Souter in an effort to determine this and in the course of conversation with Mr. Souter agreed to represent Mr. Souter, and a retainer agreement was signed by both Mr. Souter and the respondent.
"3. That while at Christian Hospital, the respondent also talked with Idelle Williams and Isaac Williams, her husband. Thereafter, Idelle Williams, niece of John Souter, talked with her uncle, the result of which was that John Souter decided he did not want respondent to represent him and respondent gave the retainer agreement to Mr. Souter, thereby releasing him of his obligations, if any, under the agreement.
"4. The respondent never determined who the person was who placed the telephone call to his office or who the lady or ladies were that had requested this call to be made. The testimony of the three witnesses for the complainant is conflicting as to time, location of persons while certain conversations were alleged to have taken place, and the substance of the conversations themselves. The testimony of John Souter conflicts in material respects with the testimony of Idelle Williams and Isaac Williams, and they with each other.
"5. That the evidence fails to establish the respondent to be guilty of unprofessional conduct as charged.

*459 "RECOMMENDATION OF INNOCENCE

"It is recommended that the respondent be found not guilty as charged in the complaint."
The Board of Governors rejected the findings and recommendations of the referee and entered its judgment suspending respondent for "six months and thereafter until he shall demonstrate his rehabilitation and * * * pay the costs * * * in the amount of $272.65." Pertinent portions of this judgment follow:
"After hearing, the referee found the respondent not guilty. Upon consideration of the entire record, the Board of Governors disagrees with the conclusions of its referee.
"The evidence herein shows and the referee has found, the following allegations of the Complaint to have been sustained: The respondent was a member of The Florida Bar engaged in the practice of law in Dade County, Florida, on October 9th, 1964; on the evening of October 9th, 1964, respondent went to Christian Hospital in Dade County; at that time the witnesses, Idell Williams, John Souter and Isaac Williams were present at said hospital seeking emergency treatment for injuries sustained in a traffic accident which happened that same evening; the respondent was not personally acquainted with any of said injured persons; respondent introduced himself to said injured persons and after brief conversations with them agreed to represent one or more of them as their attorney in their claims arising from the accident that evening; the respondent had blank retainer agreements with him which were executed by him and one or more of the injured persons that evening, in and about the emergency room of said hospital.
"The foregoing findings are based upon overwhelming evidence in this record. The Board considers the foregoing findings as sufficient for its determination of guilt and disciplinary recommendation based thereon. It also observes that some of the pertinent evidence may be in dispute and the findings of the referee based thereon are not necessarily reversed. Respondent contends that he was present at Christian Hospital on the night in question on legitimate business pursuant to a telephone call, from some unknown caller, which was relayed to him by his telephone answering service. This statement of respondent was not corroborated by any evidence. The Board is aware that accident victims frequently require emergency medical attention. However, the urgency of the lawyer's role in this particular situation was not demonstrated by this record nor was it necessitated in the legal experience of the members of this Board. (Emphasis added.)
"The Board finds that the obvious impropriety of respondent's activities on that night is not excused by respondent's uncorroborated testimony of the alleged telephone call, nor by his youth and relative inexperience at the Bar.
"The Board carefully considered the report of its referee and his discussion of the conflicts in the testimony of the three accident victims; however, the Board does not find such material conflict in their testimony as would disturb the findings recited above.
"The Board further considered the referee's finding, `5. That the evidence fails to establish the respondent to be guilty of unprofessional conduct as charged.' In view of the findings of fact aforesaid, it determines that this conclusion of the referee is in error. Accordingly it is
"ORDERED and ADJUDGED that the respondent, John M. Abramson, is guilty of solicitation of legal business in violation of the rules of this Court and the canons of professional ethics, that he be suspended from the practice of law for a period of six months and thereafter until *460 he shall demonstrate his rehabilitation and that he pay the costs of these proceedings in the amount of $272.65."
The referee had the material advantage of having the witness before him in evaluating the evidence in this cause. Neither this Court nor the Board of Governors is in the same position to judge the truthfulness, the candor or lack of candor, manner of replying to questions or the many other intangible things that occur in the arena of such a trial. Evidentiary findings and conclusions of the trier of facts where supported by legally sufficient evidence should not lightly be set aside by those possessing the power of review. This rule is particularly applicable in disciplinary proceedings under the Integration Rule insofar as the powers of the Board of Governors are concerned. That body is a part of the accusatory process under the Integration Rule. It makes the finding of probable cause, its attorney prosecutes the charges and it enters what the Integration Rule designates as the judgment. Under such circumstances we may not constitutionally, nor have we since the adoption of Article V of the Constitution, F.S.A., accorded such judgment any effect greater than a recommendation as to the guilt and the extent of punishment, if any, to be inflicted.
Before the adoption of Article V of our Constitution effective July 1, 1957, disciplinary proceedings were carried on in substantially the same manner as at present. With reference to the power of the Board of Governors at that time we said, in Application of Harper, Fla. 1956, 84 So.2d 700, 706, 54 A.L.R.2d 1272:
"Disciplinary proceedings by The Florida Bar are essentially a function of this Court. While the local committees and the Board of Governors are not technically judicial tribunals, their findings and recommendations should be considered as those of an intermediate agency of this Court. They are in fact an arm of this Court dealing with a vital function of the Court and under its exclusive jurisdiction. See Velkov v. Superior Court in and for Los Angeles County, 40 Cal.2d 289, 253 P.2d 25, 35 A.L.R.2d 1348. While the power to render the ultimate judgment in these cases is vested in this Court, the findings and recommendations of the constituted officers of The Florida Bar are entitled to receive due consideration and are of persuasive force. Copren v. State Bar, 64 Nev. 364, 183 P.2d 833, 173 A.L.R. 284." (Emphasis added.)
The above language is clearly applicable under amended Article V and the present disciplinary rule.
Reverting now to the judgment of the Board of Governors, we cannot accept the findings of the Board or its conclusions as to the evidence. Nor can we agree that the referee may not accept the evidence of the respondent as true, even though not corroborated. There is no rule that requires the respondent's testimony to be corroborated. The weight and credibility of such evidence, as we have stated, is peculiarly a problem for the trier of fact.[2] We do not, however, agree with the recommendation of either the Board of Governors or the referee as to the judgment which should be entered. Accepting as we do the premise that the respondent in good faith was present at the hospital in response to a telephone call, we think his conduct in pursuing the matter of employment to the point of securing the execution of an employment contract under the circumstances existing was, to say the least, an exhibition of exceedingly poor taste. We are inclined to attribute such conduct to his youth and inexperience and, in this instance, to impose a punishment of a public reprimand. Contracts of employment between attorney and client should not be entered into under such circumstances.
*461 The respondent, John M. Abramson, is hereby publicly reprimanded for such conduct. In addition he is hereby directed to pay to The Florida Bar the costs of these proceedings in the amount of $272.65 within thirty days from the date this order is filed in the office of the Clerk of this Court.
It is so ordered.
THORNAL, C.J., and THOMAS, ROBERTS, O'CONNELL, CALDWELL and ERVIN, JJ., concur.
NOTES
[1] The complaint was in two counts. Count #2 was abandoned by the Bar counsel at the hearing before the referee. This count charged:

"In addition to the personal solicitation above-mentioned, the respondent, John M. Abramson, solicited his professional employment by these same three persons through Dr. Albert Reinherz. It is further alleged that the said Dr. Reinherz insisted that the accident victims named above employ the respondent as their attorney. Upon their refusal to employ the respondent as their attorney, the said touter, Dr. Albert Reinherz, refused to treat these people for their injuries, which injuries were the only reason for their presence at Christian Hospital. Thereafter, because of Dr. Reinherz' refusal to treat them, the said persons left the premises and sought treatment, and were treated at Mount Sinai Hospital on Miami Beach."
[2] See The Florida Bar v. Scott, Fla., 197 So.2d 518, opinion filed April 5, 1967.